FRANK HEBNER *v.* PALATINE INSURANCE COMPANY,

and

FRANK HEBNER *v.* SUN INSURANCE COMPANY,

and

FRANK HEBNER *v.* OAKLAND HOME INSURANCE COMPANY.

*Filed at Ottawa May 15, 1895—Rehearing denied October 16, 1895.*

1. INSURANCE—*void if procured by half owner without disclosing ownership.* No recovery can be had on a policy procured by a half owner of property in his own name, when such policy provides it shall be void if the interest of the assured be other than unconditional and sole owner, and the company was ignorant of the ownership when the policy was issued.

2. SAME—*when company may deduct expense of protecting property.* Under a provision in a policy that in case of fire the assured shall protect and put in good order the insured property, the company may deduct expenditures made by it for such protection at the express request of the assured.

*Hebner* v. *Palatine Ins. Co. et al.* 55 Ill. App. 275, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. FRANCIS ADAMS, Judge, presiding.

The three actions were brought by Frank Hebner on three policies of insurance, one against the Palatine Insurance Company, one against the Oakland Home Insurance Company, and one against the Sun Insurance Company. It appears that on or about the 12th day of April, 1893, Frank Hebner, through C. A. McDonald, applied to the three companies for insurance on his propeller "City of Concord." Three policies were written as they were ordered—one in the Oakland Home Insurance Company, one in the Palatine and one in the Sun, insuring Frank Hebner against fire upon this boat for a period of one year, under what is known as the New York standard form of fire policy. The Oakland Home's policy was for $5000, the Palatine's for $3500 and the

Sun's for $1000.    The insurance companies did not know
that Hebner was not the sole and unconditional owner of
the entire boat, nor did any of their agents know that he
was not the sole and unconditional owner of that boat,
until long after the fire occurred.  On the sixth of Decem-
ber, 1893, the boat took fire at Toledo, and in order to ex-
tinguish the fire she was pumped full of water and sunk
in the river.    Captain Hebner notified the companies, but
did not inform them that any other person or persons
had any interest in the boat, but telegraphed McDonald,
who had placed the insurance for him, asking him to
ascertain whether the companies desired to raise the
boat or whether they wished him to raise her, and also
stated that he expected some one representing the com-
panies in Toledo to arrange as to the raising of the boat.
In another telegram he stated he had an offer to raise
the boat for $2700, and asked that McDonald should have
the insurance companies send a man there.    In response
to these telegrams, and at McDonald's solicitation, the
appellees did, on December 12, 1893, send James A. Cal-
bick to Toledo to confer with Hebner regarding the rais-
ing of the boat, and, after conversation with Hebner on
December 13, Calbick on December 14 made a contract,
on behalf of the insurance companies, with Harris W.
Baker, of Detroit, Mich., to raise the boat and place her
cargo on dock at Toledo for the sum of $2250, which it
is agreed was a reasonable price.    This contract was in
writing, and signed by the three insurance companies
and Harris W. Baker on December 14, the three insur-
ance companies signing by James A. Calbick, their agent.
Baker immediately proceeded to raise the boat under the
contract.  Neither of the three companies had any notice
that any person other than Hebner owned an interest in
the propeller until December 20, 1893, when for the first
time they learned that Hebner owned only one-half of
the boat and the other half was owned by W. F. and
J. S. Botsford.    Baker raised the boat under his con-

tract, the expense of which amounted to $2331.40, which was paid by the insurance companies, as they had agreed to do by their written contract. After the insurance companies received notice that Hebner was not the sole owner of the propeller they refused to take any further steps in regard to the adjustment of the loss until January 12, 1894, when Hebner agreed, in writing, that the loss might be adjusted and approved without the insurance companies waiving any of their rights under the policies. Under this agreement the total amount of the loss to the propeller was fixed at $9857.10. This would make Hebner's loss on his half of the boat amount to $4928.55, of which sum the companies had already paid, in raising the boat, $2331.40, leaving still due Hebner, if he was entitled to recover anything, providing the contract required him to raise the boat, the sum of $2597.15. The parties waived a jury and submitted to a trial before the court, and the court entered judgment in favor of plaintiff for the amount last above named. This judgment was affirmed in the Appellate Court.

Robert Rae, for appellant:

Upon the delivery of the vessel to Hebner by the absent one-half owner, with power to use her as his own, Hebner stood in the same position, and occupied the same legal relationship to the vessel, as a charterer in possession, and as such had a right to insure the vessel in his own name to the extent of her value. *Oliver* v. *Green*, 3 Mass. 133; *Locke* v. *Insurance Co.* 13 id. 61; *Bartlett* v. *Walter*, 13 id. 267; *"The Gulnare,"* 42 Fed. Rep. 861.

Hebner's interest was sole and unconditional. *Pipe Line* v. *Home Ins. Co.* 145 Pa. St. 346.

The written and insuring parts of a policy always prevail over the printed conditions which are inconsistent with it, and which ought not to apply to it. *Grandin* v. *Insurance Co.* 167 Pa. St. 26.

An innocent failure to communicate facts about which the assured was not asked will not avoid the policy. *Washington Mills* v. *Insurance Co.* 135 Mass. 505; 112 id. 136.

This insurance being without limitation as to the interest, and non-descriptive as to the ownership of the property, is a general insurance, and covers any loss which the plaintiff would suffer from any of the perils insured against. *Pipe Line* v. *Home Ins. Co.* 145 Pa. St. 346.

A bailee responsible for the safety of his bailment may insure the goods delivered to him, not only to the extent of the value of his interest in them, but to their full value, on the ground that every person who would be liable in the event of loss of property may effect insurance for his own protection. 36 N. Y. 625; *Vannutter* v. *Insurance Co.* 2 Sandf. 490.

The insurer in this case did all and wrote all, and the insured did nothing except to pay his premium. If there was any vice in the policy which vitiated it, the innocent insured can truthfully exclaim, "Thou cans't not say I did it." 50 Upp. Can. C. P. 151; *Insurance Co.* v. *Fogleman,* 31 Mich. 481; *Dupeau* v. *Insurance Co.* 76 id. 615; *Tool Co.* v. *Association Co.* 132 Pa. St. 236.

An averment of ownership is sustained by proof of insurable interest, only. *Insurance Co.* v. *Fish,* 96 Ill. 625; *Insurance Co.* v. *Jackson,* 83 id. 302; *Insurance Co.* v. *Nelson,* 65 id. 415.

It is confidently contended that in this case the printed conditions of this policy are no part of this contract. *Grandin* v. *Insurance Co.* 167 Pa. St. 26.

The court has erred in deducting from the appellant's insurance, as conceded by the appellees, the cost of raising the vessel. *Transportation Co.* v. *Insurance Co.* 9 Ins. L. J. 461; *"The Roanoke,"* 59 Fed. Rep. 161.

BATES & HARDING, for appellees.

Mr. JUSTICE CRAIG delivered the opinion of the court:

In the decision of this case we do not deem it necessary to follow counsel in their long argument, or to enter upon an extended review of the many authorities which have been cited in the briefs. To do so would extend this opinion to an unreasonable length, and result in no substantial benefit to either of the parties.

As has been seen, Frank Hebner applied for insurance on the propeller, and the boat was insured in his name, as his property. The propeller was worth, at the time the loss occurred, $15,000. The loss was fixed at the sum of $9857.10. At the time the policies were issued Frank Hebner was not the sole owner of the propeller. He owned only one-half, and the other half belonged to W. F. and J. S. Botsford. But this fact was not disclosed to the insurance companies. It appeared, however, from the evidence, that at the time the insurance was effected the propeller was in the possession of and under the control of Hebner, and that he had agreed with the Botsfords to keep her insured. The policies contained the following provisions:

"*First*—This entire policy shall be void * * * if the interest of the insured be other than unconditional and sole ownership.

"*Second*—This entire policy shall be void if the insured has concealed or misrepresented any material fact concerning this insurance or the subject thereof, or if the interest of the insured in the property be not truly stated herein."

Notwithstanding these provisions in the policies it is claimed, on behalf of the appellant, that he is entitled to recover the entire loss, less his proportionate share of raising the vessel.

It may be conceded that it was entirely competent for Hebner, had he so desired, when the contract of insurance was made, to not only insure his own interest in

the propeller, but also the interest of the other two own-
ers.   But no language will be found in the policies indi-
cating any intention whatever of the contracting parties
to insure property owned or possessed by any person
other than Hebner.   It will be observed by going to the
policies, which constitute the contract between the par-
ties, that Hebner was not insured as to any part of the
vessel as manager, trustee or agent, nor was he insured
against loss on property held by him as agent, in trust
or as manager for some other person, as he might have
been, and the law which controls cases of that charac-
ter can have no bearing here.   The contracting parties,
Hebner and the insurance companies, agreed that if the
interest of the insured be other than sole ownership the
policies shall be void.   This was the contract of the par-
ties, deliberately made, and the question is whether that
contract shall control, or shall some other contract never
made be enforced.

The law as laid down by the authorities, as we under-
stand it, is:   Where the policy contains a provision that
the insured is the unconditional and sole owner of the
property, and it turns out the insured was not the uncon-
ditional and sole owner, no recovery can be had, unless
it appears there was a waiver or an estoppel, by which
the insurance company is precluded from relying on the
contract.   May on Insurance, (3d ed.) sec. 287; *Southwick*
v. *Atlantic Fire and Marine Ins. Co.* 133 Mass. 457; *Brown* v.
*Com. Ins. Co.* 86 Ala. 186; *Farmville Ins. Co.* v. *Butler*, 55 Md.
233; *Fuller* v. *Phœnix Ins. Co.* 61 Iowa, 350; *Fire Ins. Co.* v.
*Weaver*, 70 Md. 536; *Finney* v. *Bedford Ins. Co.* 8 Metc. 348.

The case last cited is like the present case, except
that the agent knew, when the policy issued, the condi-
tion of the title.   It is there said:   "The question here
presented is not as to the competency of John S. Bates
to effect an insurance for the benefit of all his associates
who were interested in the property which was the sub-
ject of insurance, but whether, upon the face of the policy

and the terms of this contract of insurance, the legal effect is not to restrict the insurance to the sole interest of Bates. It may at once be conceded that it was competent for Bates to effect such insurance on the entire interest of all concerned if either previously authorized by the co-owners or if they elected to ratify his act, even after the loss. But the appropriate form of the policy in such case is 'for himself and other owners,' or 'for whom it may concern,' or other words indicating that the insurance is to embrace an interest beyond that of the party in whose name the policy is issued. * * * But the real question here is, whether a policy made in the name of a particular person who is the owner of a small proportion, in interest, of the property insured, without any words indicating an intention to insure beyond his own interest, can be made effective to cover the interest of others upon parol proof that the application for insurance was for such others as well as for the party named, and that this was well known to the insurers, and that it was the intention and understanding of the parties that the policy was to cover the interests of all the owners. * * * When the parties have put their agreement into writing, and the terms of it are plain and direct, leaving no uncertainty as to the nature of it, we must treat it as the whole engagement of the parties. * * * The evidence proposed in the case at bar was incompetent and the verdict for the defendant was properly ordered."

The case in 61 Iowa is quite similar to the case under consideration. In the decision of the case it is, among other things, said: "It is contended that Ashem had an insurable interest in the property of plaintiffs. This proposition may be conceded for the purposes of this case. We do not think it is material whether he had an insurable interest or not, because the fact remains that according to the terms of this policy he insured no property but his own; and in order to include the property of

the plaintiffs in the policy it is necessary to show that it was included, either by proof of a waiver of the conditions of the policy or by proof that a different contract was actually made than that which is expressed in the policy. There are many adjudged cases which hold that certain conditions of a policy of insurance may be waived by parol. These cases include such provisions as the time of the payment of premiums, the production of proofs of loss, the breach of any condition in the policy as against the increase of risk, or the keeping of hazardous goods, or the like. (See cases cited in Wood on Ins. 832.) In this court it has been held that an increase of risk may be waived by an agent by parol. (*Viele* v. *Germania Ins. Co.* 26 Iowa, 9.) That the time for payment of the premium may be waived. (*Young* v. *Hartford Ins. Co.* 45 Iowa, 377.) Other cases of waiver of conditions need not be stated. In the case at bar we are asked to go a step further than any case to which our attention has been called, and hold that the conditions of a policy as to the subject of the insurance—the property insured and the ownership thereof—may be waived by parol. In other words, we are called upon to allow the plaintiffs to maintain an action upon a policy in which they are not named, and which, by its very terms, excludes all property except such as was owned by Ashem in his own right."

In the case cited from Alabama, *supra*, it is said: "Where the true ownership is not required to be fully stated by the conditions of the policy, generally, it will be sufficient if the assured has an insurable interest; but when such requirement is the condition of the policy it becomes a material part of the contract, and all rights under it are forfeited by non-compliance. * * * By express stipulation the parties make it material, and the validity of the contract is dependent on a compliance with the condition. The assured, by accepting a policy in which such condition is incorporated, becomes bound

thereby, and when he claims to enforce the contract and receive its benefits he is estopped from denying his assent to the stipulation."

There are many other cases where the same doctrine has been announced, but it is not necessary to make quotations from them. Indeed, this court in *Reaper City Ins. Co.* v. *Brennan*, 58 Ill. 158, in effect laid down the same rule.

On the trial the defendants, through their attorneys, stated to the court that although not liable they were willing to pay plaintiff, as half owner of the vessel, one-half the amount of the loss, less the expense of raising the vessel and placing her in proper condition. Under this agreement a judgment was rendered for $2597.15,—one-half the loss after deducting the amount paid by defendants for raising the vessel. It is, however, claimed that the court erred in deducting the cost of raising the vessel. The policies provide that if fire occur the assured shall protect the property from further damage; that he shall separate the damaged and undamaged personal property, and that he shall put the property in the best possible order, and that within sixty days he shall make proofs of loss. Under the policy we think it was the duty of Hebner to raise the vessel at his own expense and protect it from further damage. He applied to the insurance companies to raise the boat for him. This they did at $400 less expense than he was able to do, and we see no reason why the amount should not be deducted.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*