AMELIA RIEGER, APPELLANT, v. CARRIE SCHAIBLE ET AL., APPELLEES.

FILED OCTOBER 9, 1909. No. 16,127.

1. **Appeal: LAW OF CASE.** "The determination of questions presented to this court in an appellate proceeding becomes the law of the case, and, ordinarily, will not be reexamined when the cause is again brought up for review." *Leavitt v. Bell,* 59 Neb. 595.

2. **New Trial: NEWLY DISCOVERED EVIDENCE.** "A new trial will not be granted a litigant on the ground of newly discovered evidence when it appears that such evidence was not produced at the trial of the case because the litigant had forgotten its existence." *Upton v. Levy,* 39 Neb. 331.

3. ――――: ――――: DILIGENCE. "To entitle a party to a new trial on account of newly discovered evidence, it is not enough that the evidence is material and not cumulative. It must further appear that the applicant for the new trial could not, by the exercise of reasonable diligence, have discovered and produced such evidence at the trial." *Smith v. Hitchcock*, 38 Neb. 104.

4. Appeal: CONFLICTING EVIDENCE. "Where the evidence is conflicting and the judgment is supported by competent evidence, it will not be disturbed, even though a different conclusion might have been reached." *Burwell Irrigation Co. v. Lashmett*, 59 Neb. 605.

APPEAL from the district court for Richardson county: JOHN B. RAPER, JUDGE. *Affirmed*.

*C. Gillespie* and *E. Falloon*, for appellant.

*Reavis & Reavis*, contra.

FAWCETT, J.

This is the third time this case has been before us for consideration. The result of our deliberations on the first two occasions will be found in 81 Neb. 33, 58. After the case was remanded the district court evidently proceeded upon the theory that the law of the case was settled by the two opinions just referred to. In this the district court was right. *Leavitt v. Bell*, 59 Neb. 595. Upon the trial the court called a jury to determine the questions of fact in controversy. The case was submitted to the jury upon instructions which are not excepted to by any of the parties. Two special findings were submitted and answered by the jury, viz.: "(1) Was the contract which was entered into between Henry Rieger and Amelia Lawler entered into before or after the marriage of said parties? Ans. Before marriage. (2) Was the general purport of the contract understood by Amelia Lawler at the time she signed it? Ans. Yes." The jury also returned a general verdict in favor of the defendants. A motion for a new trial was filed, and subsequently a second motion for a new trial on the ground of newly discovered evidence was submitted. Both motions were over-

ruled, and judgment entered in favor of defendants, from which this appeal is prosecuted. No formal assignment of errors was filed in this court, and no errors in the admission or exclusion of evidence is argued in appellant's brief. The only error of law which can be considered as expressly reserved by appellant is under the fifth subdivision of their brief, which concludes with the statement that it was error for the trial court to deny the motion for a new trial on the ground of newly discovered evidence.

It follows from what has been said that the only questions for consideration now are: (1) Did the court err in overruling the motion for a new trial on the ground of newly discovered evidence? (2) Is the judgment of the court sustained by sufficient evidence? Without determining the question as to whether or not the evidence of the newly discovered witness would have been competent, which we regard as doubtful, we think it is clear that no such diligence was shown as would entitle plaintiff to a new trial upon that ground. The witness whose testimony they desired to present makes affidavit to the fact that she was present at the time the antenuptial agreement was signed by the principals thereto; that she saw it signed, and heard statements made by the parties at the time. If this is true, then plaintiff knew of her presence. That she did know of her presence is not negatived by plaintiff in her own affidavit. She simply alleges that "by reason of her age and the lapse of time she was unable to recollect all that took place in said store at the time said so-called antenuptial agreement was signed, nor could she, for the reason above stated, recollect who all were present, and she did not recollect at the time she testified, or at any time she may have consulted her attorneys, that Kate Rieger was in said store, and she only learned that Kate Rieger was in said store at the time said agreement was signed from her attorney, Edwin Falloon, who told her in his office some time after the rendition of the judgment in this case, and after the 18th day of October, 1908." She further states that "since the controversy

arose all the defendant heirs in this action have been bitter partisans, and she naturally inferred from that fact that the newly discovered witness, the wife of one William M. Rieger, would be hostile to her interest and would refuse to tell her anything, even if she knew anything, and, she not believing that she knew anything about this case, she never so much as asked or inquired of her what knowledge she may have had of it." The affidavit of Mr. Falloon, senior counsel for plaintiff, was also filed, in which he states: "That at one time he asked Kate Rieger, wife of William M. Rieger, the newly discovered witness, what she knew about this case. To which she replied that she did not want to be drawn into the controversy, and declined to discuss the matter with this affiant. That at the time this conversation took place this newly discovered witness was a client of this affiant, and both she and this affiant were attempting to effect a reconciliation between this newly discovered witness and her husband, William M. Rieger, and, out of consideration for the feelings of this newly discovered witness, this affiant forebore to pursue the inquiry any further, believing at the time that she knew nothing of any importance, and that the further inquiry on the part of this affiant would not only be insolent, but in a measure a breach of the confidential relations that existed, as attorney and client, between affiant and said newly discovered witness." We think this showing not only fails to establish sufficient diligence on the part of plaintiff and counsel, but affirmatively shows a failure to make diligent inquiry at a time when it might have elicited the desired information. The relation of attorney and client then existing between counsel and Kate Rieger did not preclude counsel's pushing his inquiry of Mrs. Rieger as to the transactions concerning the execution of the antenuptial agreement in controversy. We think the statement in his affidavit that Mrs. Rieger at that time said to him "that she did not want to be drawn into the controversy, and declined to discuss the matter" with him,

was notice of the fact that she had some knowledge of the matter about which he was inquiring. If she had had no knowledge, she would not have hesitated to say at once that she knew nothing about the matter. Without pursuing the subject further, we think the trial court did not err in overruling the motion for a new trial. *Upton v. Levy,* 39 Neb. 331; *Smith v. Hitchcock,* 38 Neb. 104.

The question of the sufficiency of the evidence was fairly submitted to the jury under instructions which, as we have said, were not excepted to. As the jury were acting in an advisory capacity only, possibly it was not necessary to note exceptions to the instructions; but, even if the jury were acting in such capacity only, the court seems to have been satisfied with their findings of fact in the case, and to have adopted the same and rendered judgment thereon. These findings, whether they be considered as by the jury or the court, are based upon conflicting evidence, which possibly would have sustained a finding and judgment either way. In such a case this court cannot interfere. *Burwell Irrigation Co. v. Lashmett,* 59 Neb. 605.

The question as to whether or not plaintiff should be permitted to revoke her election in the county court and take under the will, and the further question as to plaintiff's rights, if any, in the homestead of her deceased husband have no place in the case before us and are not considered.

We are urged to overrule our former judgment in 81 Neb. 33, and to adhere to the decision in *Fellers v. Fellers,* 54 Neb. 694. *Fellers v. Fellers* was fully considered and deliberately overruled in 81 Neb. 33, and upon a reconsideration the decision in 81 Neb. 33 was adhered to (81 Neb. 58). We must therefore decline to further consider *Fellers v. Fellers.*

Finding no error in the record, the judgment of the district court is

AFFIRMED.