## James H. Butler, Appellee, v. Security Insurance Company of New Haven, Connecticut, Appellant.

## Gen. No. 8,038.

1. INSURANCE—*measure of value of replacement cost.* In an action on a fire insurance policy it was error for the court to instruct that the measure of value of the goods destroyed was their market value at their location or, in case that could not be shown, their wholesale price plus enough to make the selling price of insured, instead of instructing that, under the policy provision against loss of no more than replacement cost to insured, the value could not exceed wholesale or manufacturer's price plus transportation and handling.

2. INSURANCE—*jury finding of excessive value for goods burned as reversible.* A finding by the jury in an action on a fire insurance policy of greatly excessive values for goods lost constitutes reversible error.

3. INSURANCE—*insufficiency of evidence to support finding that mortgage not in effect.* In an action on a fire insurance policy which contains a clause avoiding the policy if the insured goods are or shall be incumbered by a chattel mortgage, where the pleadings establish the existence of a debt and the giving and recording of a chattel mortgage on the goods and that the debt did not become due until after the fire and there is evidence of statements by the mortgagor and mortgagee, made after the loss, that the mortgage was still in effect, in addition to other evidence of like import, a special finding that the mortgage was not in force at the time of the fire is against the weight of the evidence.

4. INSURANCE—*applicability of incumbrance clause as affected by part payment of incumbrance.* In an action on a fire insurance policy exempting the insurer in case a mortgage is placed on the property, it is error to refuse an instruction that where a portion of the note secured by a chattel mortgage on the property is paid, and a new note executed for the amount remaining unpaid, the lien of the mortgage is not thereby destroyed unless the parties so intended.

5. INSURANCE—*burden of proving release of mortgage placed on insured property in violation of incumbrance clause.* The court erroneously refused an instruction, in an action on a fire insurance policy providing the policy shall be avoided for placing a mortgage on the property, that the burden of proof was upon the insured to establish payment or cancellation of a note and mortgage where the mortgage was shown to have been executed, delivered and duly recorded and the debt secured was shown to have been not due at the time of the fire.

6. INSURANCE—*breach of incumbrance clause avoiding the policy.*
A breach of the incumbrance clause of a fire insurance policy by the
existence of a chattel at the time the policy is issued, or by placing a
chattel mortgage thereon after its issuance, avoids the policy.

Appeal by defendant from the Circuit Court of Morgan county; the
Hon. NORMAN L. JONES, Judge, presiding. Heard in this court at the
October term, 1926. Reversed with findings of fact. Opinion filed
April 22, 1927. Rehearing denied June 24, 1927.

H. P. SAMUELL and ACTON, ACTON & SNYDER, for
appellant.

JOHN J. REEVE and HUGH P. GREEN, for appellee.

MR. JUSTICE SHURTLEFF delivered the opinion of the
court.

This is an action in assumpsit brought by appel-
lee against the Security Insurance Company of New
Haven, Connecticut, appellant, on a declaration of
one count. The declaration sets out the policy *in haec
verba* providing for insurance against direct loss or
damage by fire, except as provided in said policy for
the term of one year from the 23rd day of February,
1924, at noon, to an amount not exceeding $2,500 on
the stock of merchandise and barber shop furniture
and fixtures.

The policy was of the so-called standard form, and
provided among other things that the company should
not be liable beyond the actual cash value of the prop-
erty at the time of any loss or damage, and the loss
or damage to be ascertained or estimated according
to said actual cash value, with proper deductions for
depreciation, and should in no event exceed what it
would then cost the insured to repair or replace the
same with material of like kind or quality; that the
policy should be void in case of any fraudulent or
false swearing by the insured touching any matter re-
lating to the insurance or the subject thereof, whether

before or after a loss, and would be void if the subject of insurance be personal property and be or become incumbered by chattel mortgage; that the loss should not become payable until 60 days after said notice, ascertainment, estimate, and satisfactory proofs of loss have been received by the company; that the company shall not be liable for any greater amount than the amount of this policy shall bear to the whole insurance on said property.

The declaration alleged that the plaintiff had an interest in the property to the amount of the insurance stipulated in said policy, and that such property was consumed and destroyed by fire on the 16th day of February, 1925; that notice was given the company on the 17th day of February, 1925, and proofs of loss were submitted on the 17th day of April, 1925, and that the appellee has kept and performed all things on his part to be kept and performed.

There was a demurrer to the declaration which was overruled, and appellant filed a plea of the general issue and various special pleas, the second plea setting out the giving of a chattel mortgage upon the property on February 26, 1924, and the third plea averring that at the time the policy was issued there was in full force and effect a chattel mortgage on the property described to one Otto Speith for $500, which was given and executed February 26, 1923, and became due on February 26, 1924. The fourth plea averred other concurrent insurance and the fifth plea averred: That the proof of loss which was submitted showed that at the time the policy was issued no incumbrance of said property existed, nor has any since been made, except the mortgage given to Mrs. William Kintner for $1,500, and that because the proof of loss contained such a recital showing that the terms of the policy had been violated, the defendant had returned said proof of loss and denied liability under the chattel

mortgage clause therein pleaded, and no other or further proof of loss has been submitted.

There was a sixth plea averring false swearing on the part of the insured, which was amended and upon which an issue was made, but we deem it unnecessary to go into the particulars of that issue. The court sustained a demurrer to the second, third, fifth and sixth pleas. The demurrer was sustained to the second and third pleas for the reason that the pleas did not allege that the chattel mortgage was in full force and effect and a lien on the property at the time of the loss complained of, and the demurrer was sustained to the fifth plea on the ground that by returning the proof of loss and denying liability, appellant waived further proof of loss. An amended second plea was filed alleging that the mortgage of $1,500 to Louise Kintner, which was referred to in the original second plea, was a valid and subsisting lien at the time of the loss, and that said mortgage remained unreleased of record and that the note secured by said mortgage remained unpaid on the date of the loss.

Appellants joined issue on the first plea of the general issue, replied to the fourth plea that appellant was liable in an amount in excess of 24-61 of the loss sustained, and to the amended second plea appellee replied that the mortgage described was not a valid and subsisting lien on the property of appellee and that the note secured by said mortgage did not remain unpaid on said day. In substance, appellee pleaded payment or cancellation of said indebtedness prior to the loss.

Issues were made on these replications and there was a verdict and judgment in appellee's behalf in the sum of $2,049.17 and appellant has brought the record to this court for review.

Appellant assigns error upon the proofs presented, over appellant's objection, tending to show the value of the goods destroyed or damaged, or appellee's loss.

The court ruled: "On the question of the value of these, if it has a market value here in Jacksonville, that is the value that should be proven. Where there is no Jacksonville market value and it has no market value, he can prove the value of the wholesale price." Under this ruling appellee was permitted to testify to the value of the stock of goods from a list made up of prices from the manufacturers, from whom he purchased f. o. b., plus 40 per cent, which amounted to appellee's selling price of the goods in Jacksonville. In other words, it constituted the wholesale price, plus appellee's profit of 40 per cent. This was error. The policy provided that the loss in no event should exceed the cost to the insured to replace the same with material of like kind and equal quality. This in no event could exceed the wholesale or manufacturer's price, plus transportation and handling. *Standard Sewing Mach. Co. v. Royal Ins. Co.*, 201 Pa. 645, 51 Atl. 356. The court erred also for the same reason in not giving appellant's instruction No. 27 upon that subject.

There was an issue of fact submitted to the jury upon which there was a special finding, determining that the chattel mortgage from appellee to Louise Kintner was not in full force and effect at the time of the fire complained of in the declaration. We have examined all of the testimony and the court's instructions to the jury upon this issue. The court instructed the jury on behalf of appellant that if they found from a preponderance of the evidence that such mortgage was made and remained a lien on the property at the time of the loss complained of, then such mortgage was a complete defense of appellee's cause of action. However, three instructions were given for appellee upon this issue, placing the burden of proof upon appellant to establish the chattel mortgage lien, appellee's third instruction closing as follows: "Yet if the defendant has failed to show by the preponder-

ance of all of the evidence in this case that the note secured by said chattel mortgage was not paid at the time of the loss complained of, to-wit, on the 16th day of February, A. D. 1925, then, on that issue, you should find in favor of the plaintiff.''

The pleadings established the existence of the indebtedness and mortgage and the recording of the same. The mortgage debt was not due until February 26, 1925. Just how under any ordinary circumstances appellant could, by a preponderance of evidence, establish the negative of a patent fact is hard to comprehend. The execution of the chattel mortgage, its recording and the fact that it had not been released of record were admitted by appellee. Appellee, in his proof of loss, recited: ''No encumbrance on said property existed or has since been made, * * * except a chattel mortgage given to Mrs. William Kintner for $1,500.00 to use as additional capital in the business.'' Nothing was said as to the release of this mortgage, although appellee employed a professional loss adjuster to make out his proofs of loss. Appellee lived in the same home with the mortgagee, Louise M. Kintner, and appellee testified that he paid the mortgage $500 by cash and check, the larger part by check, on November 26, 1924. He says he gave Mrs. Kintner his personal note on November 26, 1924, for $1,000, and that Mrs. Kintner gave him the note and mortgage; that she did not release the mortgage of record in writing, but said she did not want to hold the mortgage. The indorsement upon the $1,500 note is peculiar, being marked: ''Int. Pdd. Nov. 26th, 1500 Pd. Nov. 26, 1924 Louise M. Kintner.'' Appellant testified that the check given Mrs. Kintner November 26, 1924, for the larger part of the $500 was drawn upon the Elliott Bank. His account in that bank was examined and on November 26, 1924, appellee's checking balance was only $125, and from then until into January the largest check given by appellee was $96.15,

and the balance of appellee's checking account ranged from $28.45 to $130. Appellee's canceled checks, including the one claimed to have been given to Mrs. Kintner, were, of course, destroyed by the fire.

In addition to this, according to the testimony of the witnesses, on February 20, 1925, four days after the fire, the appellee told James Wise, a deputy fire marshal of the State of Illinois, and who was in no way interested in this case, that such mortgage had not been paid. The same statement was made on March 17, 1925, to James A. Swisher, to Edward M. Muelhausen and to Oscar A. Morris. The last three witnesses were adjusters for different insurance companies having policies on this loss. Further, the mortgagee of the property told James Wise, the fire marshal, four days after the fire that she still held this chattel mortgage. A most unusual circumstance about such alleged payment was that the appellee did not call the mortgagee to corroborate his statement as to the discharge of the lien of such chattel mortgage. She was in Jacksonville and was produced in rebuttal to deny the statement testified to by Fire Marshal Wise, that at the time of his conversation with her four days after the fire she said she then held the chattel mortgage. She admitted having a conversation with the fire marshal but her testimony was limited to the denial of the statement that four days after the fire she had said that she then had such chattel mortgage. She did not deny that at the time of the fire she was the holder of the chattel mortgage. The evidence showed that the appellee lived at Mrs. Kintner's home, and it is indeed a strange situation that appellee did not offer her testimony in his case in chief to show the payment and discharge of such mortgage, and only called her after her admission in the presence of appellee had been testified to by a public official of the State of Illinois.

Appellee had submitted proofs of loss to his stock of goods, amounting to about $7,000. Various witnesses were produced by appellant whom appellee had solicited to take an interest in his business during the preceding year, and to whom he had stated that his stock of goods would invoice from $1,600 to $2,000. One witness, H. E. Anthony, a son-in-law of the mortgagee, was produced, who testified that in 1924 appellee solicited him to put money in the business and stated that his stock of goods would invoice around $1,600. It is uncontradicted that on the Friday preceding the trial appellee accosted the witness Anthony upon the street and asked him if he had been subpœnaed as a witness, and appellee, when informed that he had, inquired of Anthony what he was going to testify to. Anthony replied, "I guess you know." Whereupon, appellee stated to him: "I will tell you or any one else, that beats me out of that money, I will kill you."

Appellee charged in his proofs of loss a four-chair, wooden mirror case that had been used in the shop for 35 years by various owners, a value of $1,495, the price of a marble top, new, up-to-date case, when the proofs show that the case, somewhat damaged, was never worth to exceed $400. The record is replete with proofs and testimony of other articles and merchandise listed and sworn to on a similar basis. The jury found that the total loss sustained by appellee was the sum of $5,000. This finding and the special finding as to the chattel mortgage, from a reading of the entire record, are so manifestly against the weight of the testimony that either finding constitutes reversible error in this case.

Appellant tendered an instruction to the effect that where a portion of a note secured by chattel mortgage is paid, and a new note executed for the amount remaining unpaid, the lien of the mortgage is not thereby destroyed unless such was the intention of the

parties. The court refused the instruction. This was error. *Keelin v. Postlewait Co.,* 259 Ill. 135.

Appellant offered an instruction as to the burden of proof being upon appellee to establish the payment or cancellation of a note and mortgage shown to have been executed, delivered and properly recorded, and the debt not due, which instruction was refused. This was error. *Home Fire Ins. Co. v. Johansen,* 59 Neb. 349, 80 N. W. 1047. Appellee seeks to avoid this assignment of error and support the judgment on the ground that those rules apply only where the action is between the parties to the instrument. We know of no principle upon which any different rule should apply in this case. The precise question in this case is the exact relationship existing between mortgagor and mortgagee, between debtor and creditor, and that relationship should be determined by the same rules of evidence as though mortgagor and mortgagee were the parties litigant in this case.

The more serious question in this record is the existence of a chattel mortgage upon the insured's property at the time the policy was issued, and the giving of another mortgage after the policy had been issued, regardless of whether it had been canceled at the time of loss. The policy provides that, "This entire policy shall be void  *  *  *  if the subject of insurance be personal property, and be or become encumbered by a chattel mortgage."

Appellee seeks to sustain the judgment on the ground that the policy of insurance is only suspended during the pendency of the lien, in line with the principle laid down in *Traders' Ins. Co. v. Catlin,* 163 Ill. 256, where the question arose upon the terms of a policy, declaring it void in case of increased hazard and risk. The court in this case, after reciting numerous cases in our Illinois courts and construing them, said: "These decisions, whilst in conflict with the courts of New York and some other States, have so

long been the rule in this State that we are not disposed to qualify or in any manner depart from the rule announced therein. That rule is: though there be a change of risk by reason of an increased hazard, which would avoid the policy if declared forfeited by the company, yet where the company has not declared the policy forfeited and the cause for the increased hazard no longer exists, and there is no increased hazard by reason of former changed conditions, then, the policy being for insurance for a certain period, the contract of insurance will be construed, and the fact determined whether there was an increased risk at the time of the fire which in any manner was conducive to the loss. If a loss occurs during the increased hazard a recovery will be defeated. If a former increase of hazard has ceased to exist, and that increase of hazard at that former time in no way has affected the risk when the loss occurs, no reason exists why a forfeiture should result from a cause which occasions no damage.''

However, under all of the decisions in this State as to the provisions of the policy, in the case at bar we do not consider it an open question. (*Reaper City Ins. Co. v. Brennan,* 58 Ill. 158; *Hebner v. Palatine Ins. Co.,* 157 Ill. 144; *Crikelair v. Citizens' Ins. Co.,* 168 Ill. 309; *Capps v. National Union Fire Ins. Co.,* 318 Ill. 353.) In *Crikelair v. Citizens' Ins. Co., supra,* the facts were identical to those in the case at bar, except in the *Crikelair* case no attempt was made to establish a cancellation of the mortgage. In that case the court held:

''By the stipulation in the policy, the terms of which are plain, direct and unambiguous, the parties hereto agreed that if the insured property, at the time the insurance was effected, was encumbered by chattel mortgage, the indemnity should not attach but the policy should be void. This was the contract of the parties deliberately made, and the only question pre-

sented is, whether they are bound by it. They were competent to enter into the stipulation, no rule of law was contravened by it, and there is no ground apparent to us upon which to base a claim of either estoppel or waiver.

"The law declared by the greater weight of authority is, that where a policy contains a stipulation such as the one in the case at bar, and the property be, at the time of the execution of the policy, covered by a mortgage, no recovery can be had unless it appears that there was a waiver or estoppel by which the company is precluded from relying on the contract. It was so expressly ruled in *Wilcox v. Continental Ins. Co.* 55 N. W. Rep. 188, *Wierengo v. American Fire Ins. Co.* 57 id. 833, *Smith v. Columbia Ins. Co.* 17 Pa. St. 253, *Pennsylvania Ins. Co. v. Gottsman*, 48 id. 151, and *Fitchburg Bank v. Amazon Ins. Co.* 125 Mass. 431. The principle upon which these decisions rest was recognized and applied by this court in *Reaper City Ins. Co. v. Brennan*, 58 Ill. 158, and *Hebner v. Palatine Ins. Co.* 157 id. 144."

Appellee's only answer to the *Crikelair* case is, that "a reading of it fails to show that the questions presented in the case at bar, by way of special demurrers, were presented to the court in that case and that such a case is no guide for the court under the pleadings in this case." This same principle and the *Crikelair* case were affirmed in *Capps v. National Union Fire Ins. Co., supra,* where the court, on page 353, held: "It is also settled that conditions in a policy of fire insurance rendering the policy void if the interest of the insured be other than unconditional and sole ownership or if the subject of insurance be a building on ground not owned by the insured in fee simple are reasonable and valid, and that a breach of such conditions, or either of them, is a bar to a recovery under the policy in the absence of a waiver of the condition or an

estoppel which precludes the company from making its defense. (*Crikelair v. Citizens' Ins. Co.* 168 Ill. 309; *Hebner v. Palatine Ins. Co.* 157 id. 144; *Reaper City Ins. Co. v. Brennan,* 58 id. 158.) Unless he has been misled by some act of the insurer, it is generally held that a person who accepts and retains the possession of an insurance policy is bound to know its contents. *Crikelair v. Citizens' Ins. Co. supra; In re Millers' and Manufacturers' Ins. Co.* 97 Minn. 98, 106 N. W. 485; *Wierengo v. American Fire Ins. Co.* 98 Mich. 621, 57 N. W. 833; *Bostwick v. Mutual Life Ins. Co.* 116 Wis. 392, 67 L. R. A. 705.''

The court has taken an entirely different attitude in the construction of provisions in a policy affecting ownership of property which would have the effect of leading directly to speculation and pure gambling, from that adopted towards the property actually owned by the insured, around which the hazard and risk are continually changing in degree caused somewhat by the elements and the natural shifting in human affairs.

In view of these decisions and the principles laid down, we feel constrained to hold that by reason of the chattel mortgage existing against appellee's property at the time the policy was issued, and the additional mortgage given to Mrs. Kintner thereafter, appellant never became liable upon the policy in question, and the court should, at the close of appellee's case, have instructed the jury to find a verdict for appellant as requested by appellant. There is nothing in the confusion of pleadings that can change the result. As the court said in the *Capps* case:

''All matters of defense of want of title in the insured set up in the special pleas were tried under the general issue. Since the parties have tried the case on the theory that all evidence supporting the defense of want of title was properly admissible under the general issue and present the case here on the same theory

we shall so consider it. There being no objection in the trial court or assignment of cross-error in this court questioning the admissibility of this evidence under the issue as formed we do not consider the question.''

The fact that the mortgages were given and were in existence was before the court and the jury, and were competent under the general issue.

Other errors in this record are pointed out, a consideration of which we do not deem essential to a decision of the case. In the view that this court takes of a law applicable to the provisions of the policy in question, no useful purpose would be served by a remandment of this case.

The judgment, therefore, of the circuit court of Morgan county is reversed.

*Reversed with findings of fact.*

Findings of fact to be incorporated in the judgment of reversal: We find that at the time the appellee took out the policy of insurance in question the property insured was incumbered by a chattel mortgage, and after the issuance of the policy to him he again incumbered the property by another chattel mortgage, which avoided the policy.